UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

CARL MAHAN,

               Plaintiff,

v.

CATHERINE S. BAUMAN et al.,

               Defendants.

_____/

Case No. 2:22-cv-102

Honorable Maarten Vermaat

## <u>OPINION</u>

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff previously sought and was granted leave to proceed *in forma pauperis*. (ECF No. 4.) Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 5.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. § 1915A(b) and 42 U.S.C. § 1997e(c).  The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litigation Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendant(s) is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros. v.*

*Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) (stating that "[p]ursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way that they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

2

consent from the defendants[; h]owever, because they had not been served, they were not parties to the action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim. Plaintiff's request for the appointment of counsel (ECF No. 1, PageID.6) will be denied.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Kinross Correctional Facility (KCF) in Kincheloe, Chippewa County, Michigan. The events about which he complains, however, occurred at the Newberry Correctional Facility (NCF) in Newberry, Luce County, Michigan. Plaintiff sues MDOC Director Heidi Washington; Mental Health Director Unknown Party #1; NCF Warden Catherine S. Bauman; and Mental Health

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

Professionals Melody Chapin, K. Vanatta, Kyle D. Wood, and Arvid Clark. (Compl., ECF No. 1, PageID.1–2.)

In Plaintiff's complaint, he alleges that he has been denied mental health care. (*See id.*, PageID.3.) Although Plaintiff's complaint is not a model of clarity, it appears that Plaintiff faults the mental health care provided to inmates at NCF because many of the mental health professionals did not work onsite at NCF and, instead, they worked at other MDOC prisons, but provided mental health care services, apparently via video, to NCF inmates.

Plaintiff states that on November 30, 2020, he had a video appointment with Defendant Chapin. (*Id.*) During the appointment, Plaintiff told Defendant Chapin that he was hearing voices "telling [him] to kill" and that he had previously been diagnosed with "depression, PTSD, bipolar, anxiety, fatigue, anger, mood swing[s], racing thoughts an[d] hearing v[oi]ces." (*Id.*) On December 7, 2020, Defendant Chapin wrote Plaintiff a threatening behavior misconduct ticket, and Plaintiff received thirty days' loss of privileges. (*Id.*) Plaintiff contends that Defendant Chapin "is untrained, unqualified[,] unskilled and incompetent." (*Id.*)

Plaintiff contends that, as the warden at NCF, Defendant Bauman "is responsible for making sure that [there is] onsite mental healthcare service[,] which it is not." (*Id.*) Instead, Plaintiff states that the mental health providers are physically located at other prisons. (*See id.*, PageID.3–4.) Specifically, Plaintiff states that Defendant Vanatta did not work onsite at NCF, and instead worked onsite at the Chippewa Correctional Facility (URF). (*Id.*, PageID.4.) On January 25, 2022, Defendant Vanatta responded to Plaintiff's grievance and advised him that "a grievance is not a proper way to handle [a] mental health request." (*Id.*) Plaintiff states that Defendant Wood also was not onsite at NCF, and instead was physically located at KCF. (*Id.*) Plaintiff contends that Defendant Wood "is untrained, unqualified, [and] unskilled to give onsite mental health [care],"

4

and "he showed a deliberate indifference to [Plaintiff's] . . . serious mental health need." (*Id.*) Further, Plaintiff states that Defendant Clark did not work onsite at NCF, and instead worked onsite at URF. (*Id.*) Plaintiff contends that Defendant Clark received Plaintiff's mental health request form on February 3, 2022, "stating what [Plaintiff] was [diagnosed] with[,] which was totally disregarded," and Plaintiff has "not seen any doctor yet." (*Id.*)

Plaintiff alleges that Defendant Unknown Party #1—the Mental Health Director—and Defendant Washington—the MDOC Director—are "responsible for hiring qualified mental health professional[s] for onsite [care]," and "none of the named Defendants meets [the] requirements [because] there is no onsite qualified mental health professional working at [NCF]." (*Id.*, PageID.5.)

Plaintiff states that he submitted a number of health care request forms from February 4, 2021, through February 3, 2022. (*Id.*, PageID.3.) Plaintiff does not indicate what services he requested when he submitted the forms, and he does not indicate whether he received any responses to the forms. (*See generally id.*)

On March 1, 2022, Plaintiff wrote to Resident Unit Manager Farley (not a party) "about [Plaintiff] being transf[erred] to get mental help." (*Id.*, PageID.4.) On March 4, 2022, Plaintiff states that Defendant Bauman "came to see [him]" and "wrote [him] a threatening behavior [misconduct ticket]," and Plaintiff was found guilty and received thirty days' loss of privileges "for tell[ing] Warden Bauman [he was] hearing v[oi]ces telling [him] to kill." (*Id.*) Plaintiff contends that Defendant Bauman told Plaintiff that since he was not diagnosed "in here," "we decided you have 'no mental healt[h] issues.'" (*Id.*) Subsequently, Plaintiff was transferred from NCF on March 11, 2022. (*Id.*, PageID.5.) Plaintiff alleges that "[it has] been eighteen (18) months," and he has "not received any mental service to date." (*Id.*, PageID.3; *see id.*, PageID.5.)

5

Based on the foregoing allegations, Plaintiff avers that Defendants violated his rights under the Eighth Amendment and the Equal Protection Clause of the Fourteenth Amendment. (*Id.*, PageID.3.) As relief, Plaintiff seeks compensatory and punitive damages, as well as injunctive relief. (*Id.*, PageID.6.)

## II.   Request for the Appointment of Counsel

Plaintiff has requested the appointment of counsel. (ECF No. 1, PageID.6.) Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604–05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604–05; *see Mallard v. U.S. Dist. Ct.*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court has carefully considered these factors and has determined that the assistance of counsel is not necessary to the proper presentation of Plaintiff's position. Plaintiff's request for the appointment of counsel (ECF No. 1, PageID.6) therefore will be denied.

## III.   Failure To State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court must determine

whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Defendants Washington & Unknown Party #1

Plaintiff fails to make specific factual allegations against Defendants Washington—the MDOC Director—and Unknown Party #1—the unnamed Mental Health Director—other than to claim that they are involved due to their supervisory positions. Specifically, Plaintiff alleges that Defendants Washington and Unknown Party #1 are "responsible for hiring qualified mental health professional[s] for onsite [care]," and "none of the named Defendants meets [the] requirements

[because] there is no onsite qualified mental health professional working at [NCF]." (Compl., ECF No. 1, PageID.5.)

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee,* 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

8

Here, Plaintiff has failed to allege that Defendants Washington and Unknown Party #1 engaged in any active unconstitutional behavior. Further, Plaintiff has failed to allege any facts showing that Defendants Washington and Unknown Party #1 encouraged or condoned the conduct of their subordinates, or authorized, approved or knowingly acquiesced in the conduct. Plaintiff's vague and conclusory allegations of supervisory responsibility are insufficient to show that Defendants Washington and Unknown Party #1 were personally involved in the alleged violation of Plaintiff's rights.

Accordingly, for these reasons, Plaintiff fails to state a claim against Defendants Washington and Unknown Party #1.

### B.      Eighth Amendment

Plaintiff alleges that Defendants Bauman, Chapin, Vanatta, Wood, and Clark violated his Eighth Amendment rights by denying him mental health care.

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the

9

seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g.*, *Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a]

10

plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842).

However, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the United States Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v. Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2014). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster*, 749 F.3d at 448; *Perez v. Oakland Cnty.*, 466

F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440–41 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, . . . he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell*, 553 F. App'x at 605 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). The prisoner must demonstrate that the care the prisoner received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

### 1. Objective Component

In this action, Plaintiff alleges that at some point in the past, he was diagnosed with "depression, PTSD, bipolar, anxiety, fatigue, anger, mood swing[s], racing thoughts an[d] hearing v[oi]ces." (Compl., ECF No. 1, PageID.3.) At this stage of the proceedings, the Court assumes, without deciding, that Plaintiff has adequately alleged the objective component of the relevant two-prong test with respect to his mental health conditions.

### 2. Subjective Component

#### a. Defendants Chapin, Vanatta, Wood & Clark

In Plaintiff's complaint, he faults the mental health care provided to inmates at NCF because many of the mental health professionals did not work onsite at NCF and, instead, they worked at other MDOC prisons, but provided mental health care services, apparently via video appointments, to NCF inmates.

Plaintiff states that on November 30, 2020, he had a video appointment with Defendant Chapin. (Compl., ECF No. 1, PageID.3.) During the appointment, Plaintiff told Defendant Chapin

that he was hearing voices "telling [him] to kill" and that he had previously been diagnosed with "depression, PTSD, bipolar, anxiety, fatigue, anger, mood swing[s], racing thoughts an[d] hearing v[oi]ces." (*Id.*) Defendant Chapin wrote Plaintiff a threatening behavior misconduct ticket on December 7, 2020, and Plaintiff received thirty days' loss of privileges. (*Id.*) Plaintiff contends that Defendant Chapin "is untrained, unqualified[,] unskilled and incompetent." (*Id.*)

Plaintiff states that Defendants Vanatta, Wood, and Clark also did not work onsite at NCF and were physically located at either URF or KCF. (*Id.*, PageID.4.) Plaintiff alleges that Defendant Vanatta responded to Plaintiff's grievance on January 25, 2022, and advised him that "a grievance is not a proper way to handle [a] mental health request." (*Id.*) Further, without providing any further explanation, Plaintiff contends that Defendant Wood is "untrained, unqualified, [and] unskilled to give onsite mental health [care]," and "he showed a deliberate indifference to [Plaintiff's] . . . serious mental health need." (*Id.*) Additionally, Plaintiff contends that Defendant Clark received Plaintiff's mental health request form on February 3, 2022, "stating what [Plaintiff] was [diagnosed] with[,] which was totally disregarded," and Plaintiff has "not seen any doctor yet." (*Id.*)

With respect to Defendant Vanatta's response to Plaintiff's grievance, § 1983 liability may not be imposed simply because a defendant denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee*, 199 F.3d at 300. Because Plaintiff's sole allegation against Defendant Vanatta is that she denied an administrative grievance, Plaintiff fails to state a claim under the Eighth Amendment against Defendant Vanatta.

Furthermore, although it is clear that Plaintiff did not like that the mental health professionals used video appointments and did not work onsite at NCF, Plaintiff fails to allege any facts showing that Defendants Chapin and Wood were deliberately indifferent to his serious

medical needs. Indeed, besides alleging that Defendants Chapin and Wood did not work onsite at NCF and alleging in a conclusory manner that they were "untrained, unqualified[,] unskilled and incompetent," Plaintiff fails to present any additional *facts* against these Defendants to show that they were deliberately indifferent to his serious medical need.[2] (Compl., ECF No. 1, PageID.3–4.) Such conclusory allegations unsupported by any facts are insufficient to state a claim. *See Iqbal*, 556 U.S. at 678.

Finally, with respect to Defendant Clark, Plaintiff makes a conclusory allegation that on February 3, 2022, Defendant Clark received Plaintiff's mental health request form, "stating what [Plaintiff] was [diagnosed] with[,] which was totally disregarded," and Plaintiff has "not seen any doctor yet." (Compl., ECF No. 1, PageID.4.) However, Plaintiff fails to allege any *facts* describing how his diagnoses were "totally disregarded." Specifically, besides Plaintiff's conclusory allegation that, on one occasion, he advised Defendant Clark of his prior diagnoses and they were "totally disregarded," Plaintiff fails to provide any supporting factual allegations describing the mental health treatment that he requested, but was allegedly denied. Plaintiff also fails to allege any additional facts showing that Defendant Clark had any further involvement in Plaintiff's mental health treatment. As discussed above, such conclusory allegations unsupported by any facts are insufficient to state a claim. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

---

[2] Without providing any additional explanation or allegations, Plaintiff also states that Defendant Chapin wrote Plaintiff a threatening behavior misconduct ticket on December 7, 2020, and he received thirty days' loss of privileges. (Compl., ECF No. 1, PageID.3.) Although Plaintiff states that this occurred on December 7, 2020, Plaintiff presents no allegations regarding this occurrence. Indeed, it appears that Plaintiff offers this as an example of Defendant Chapin's alleged incompetency as a mental health provider. (*See id.*)

Therefore, for the reasons set forth above, Plaintiff fails to state an Eighth Amendment claim against Defendants Vanatta, Chapin, Wood, and Clark. Plaintiff's Eighth Amendment claims against these Defendants will be dismissed.

### b.  Defendant Bauman

With respect to Defendant Bauman, Plaintiff contends that, as the warden at NCF, Defendant Bauman "is responsible for making sure that [there is] onsite mental healthcare service[,] which it is not." (Compl., ECF No. 1, PageID.3.) Additionally, Plaintiff contends that Defendant Bauman told Plaintiff that since he was not diagnosed "in here," "we decided you have 'no mental healt[h] issues.'" (*Id.*, PageID.4.)

As an initial matter, to the extent that Plaintiff intended to hold Defendant Bauman liable for the actions of her subordinates, Defendant Bauman may not be held liable for the unconstitutional conduct of her subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell*, 436 U.S. at 691; *Everson*, 556 F.3d at 495.

Furthermore, with respect to non-medically trained prison officials, such as Defendant Bauman, non-medically trained prison officials are not deliberately indifferent when they defer to a "medical recommendation that he [or she] reasonably believes to be appropriate, even if in retrospect that recommendation was inappropriate." *McGaw v. Sevier Cnty.*, 715 F. App'x 495, 498 (6th Cir. 2017); *see also Winkler v. Madison Cnty.*, 893 F.3d 877, 895 (6th Cir. 2018); *Stojcevski v. Macomb Cnty.*, 827 F. App'x 515, 522 (6th Cir. 2020) ("[A]n officer who seeks out the opinion of a doctor is generally entitled to rely on a reasonably specific medical opinion for a reasonable period of time after it is issued, absent circumstances such as the onset of new and alarming symptoms." (quoting *Barberick v. Hilmer*, 727 F. App'x 160, 163–64 (6th Cir. 2018) (per curiam))).

15

Here, Plaintiff contends that Defendant Bauman told Plaintiff that "we decided you have 'no mental healt[h] issues'" because you were not diagnosed "in here." (Compl., ECF No. 1, PageID.4.) Defendant Bauman's alleged statement is a recitation of medical personnel's diagnosis, or the lack of a diagnosis, of any mental health conditions. Defendant Bauman's recitation of medical personnel's determination regarding the presence of any mental health conditions does not, on its own, show deliberate indifference to a serious medical need. Although it is clear that Plaintiff believed that he was receiving inadequate mental health care from the MDOC's mental health providers, Defendant Bauman, as a non-medically trained prison official, cannot be held liable for deferring to medical staff's treatment decisions when Defendant Bauman believed them to be reasonable at the time. *See, e.g.*, *McGaw*, 715 F. App'x at 498. Plaintiff fails to allege any *facts* to show that Defendant Bauman, herself, knew of a substantial risk of harm to Plaintiff and disregarded it. *See Farmer*, 511 U.S. at 837. Plaintiff's conclusory allegations unsupported by any facts are insufficient to state a claim. *See Iqbal*, 556 U.S. at 678.

Accordingly, for the reasons set forth above, Plaintiff's Eighth Amendment claim against Defendant Bauman will be dismissed.[3]

### C.      Fourteenth Amendment Equal Protection Clause

Without providing any additional explanation, Plaintiff alleges that Defendants violated his rights under the Equal Protection Clause of the Fourteenth Amendment. (Compl., ECF No. 1, PageID.3.)

---

[3] Plaintiff also alleges that Defendant Bauman "wrote [him] a threatening behavior [misconduct ticket]," and Plaintiff was found guilty and received thirty days loss of privileges "for tell[ing] Warden Bauman [he was] hearing v[oi]ces telling [him] to kill." (Compl., ECF No. 1, PageID.4.) Besides stating that this incident with Defendant Bauman occurred on March 4, 2022, Plaintiff does not set forth any allegations regarding this occurrence. Moreover, Plaintiff does not dispute that he made a threatening statement on that date. Under these circumstances, Plaintiff fails to show that the issuance of the misconduct ticket violated Plaintiff's constitutional rights.

16

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976). Plaintiff does not allege that a fundamental right is implicated in this case or that he is a member of a suspect class; his claims therefore are not subjected to strict scrutiny.

To state an equal protection claim in a class-of-one case, Plaintiff must show "intentional and arbitrary discrimination" by the state; that is, he must show that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *see also Nordlinger v. Hahn*, 505 U.S. 1, 10–11 (1992); *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011). "[T]he hallmark of [a 'class-of-one'] claim is not the allegation that *one individual* was singled out, but rather, the allegation of arbitrary or malicious treatment not based on membership in a disfavored class." *Davis v. Prison Health Servs.*, 679 F.3d 433, 441 (6th Cir. 2012) (alterations in original) (citations omitted); *see Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 592 (9th Cir. 2008) ("The 'class of one' theory . . . is unusual because the plaintiff in a 'class of one' case does not allege that the defendants discriminate against a *group* with whom she shares characteristics, but rather that the defendants simply harbor animus against her *in particular* and therefore treated her arbitrarily." (emphasis in original)). A plaintiff "must overcome a 'heavy burden' to prevail based on the class-of-one theory." *Loesel v. City of Frankenmuth*, 692 F.3d 452, 462 (6th Cir. 2012) (citing *TriHealth, Inc. v. Bd. of Comm'rs, Hamilton Cnty.*, 430 F.3d 783, 791 (6th Cir. 2005)).

17

"Unless carefully circumscribed, the concept of a class-of-one equal protection claim could effectively provide a federal cause of action for review of almost every executive and administrative decision made by state actors." *Id.* (quoting *Jennings v. City of Stillwater*, 383 F.3d 1199, 1210–11 (10th Cir. 2004)).

The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006); *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) ("To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'" (quoting *Club Italia Soccer & Sports Org., Inc.*, 470 F.3d at 298)). "'Similarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'" *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)); *see also Nordlinger*, 505 U.S. at 10; *Tree of Life Christian Sch. v. City of Upper Arlington*, 905 F.3d 357, 368 (6th Cir. 2018).

Plaintiff's equal protection claims are wholly conclusory. Plaintiff fails to allege any facts to show that his fellow inmates were similar in all relevant aspects. Plaintiff's conclusory allegations simply do not suffice to state a claim. *See Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements."). Accordingly, the Court will dismiss Plaintiff's Fourteenth Amendment equal protection claims.

## <u>Conclusion</u>

Plaintiff's request for the appointment of counsel (ECF No. 1, PageID.6) will be denied. Further, having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim under 28 U.S.C.

§§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

An order and judgment consistent with this opinion will be entered.


Dated:      August 16, 2022                          /s/ *Maarten Vermaat*
                                                     Maarten Vermaat
                                                     United States Magistrate Judge